## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| Federal Trade Commission,<br>                  Plaintiff, | Civil Action No. 4:21-cv-02508 |
| vs. | Judge Charles Eskridge |
| Tempur Sealy International, Inc.,<br>*et al.*,<br>                  Defendants. | |

### JOINT DISCOVERY AND CASE MANAGEMENT PLAN

1. **Rule 26(f) meeting.**

The parties agree that they have satisfied their duty under Rule 26(f) by meeting and conferring regarding the submission of this Joint Discovery and Case Management Plan. Those conferences occurred on July 5, 2024, July 10, 2024 and July 15, 2024 via videoconference. The following individuals attended for each party.

> **Federal Trade Commission**: Allyson Maltas, Noel Miller, Stephen Rodger, Jeannette Pascale, Adam Pergament, and Laura Krachman.

> **Tempur Sealy International, Inc**.: Ryan Shores, Bruce Hoffman, Blair Matthews, Jacob Coate, and Gabriel Lazarus.

> **Mattress Firm Group Inc**.: Sara Razi, Preston Miller, and Lindsey Bohl.

The Parties have agreed on most elements of this Joint Discovery and Case Management Plan but disputes remain as to 6 issues. With regard to those issues, the Parties included the disputed language or position below in **bold** text and present short statements with each side's positions.

## 2. **Jurisdiction**

### a. **Basis.**

This Court has jurisdiction over this action pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and under 28 U.S.C. §§ 1331, 1337, and 1345.

### b. **Diversity.**

Not applicable

## 3. **Case background.**

### a. **General description.**

Plaintiff Federal Trade Commission ("FTC"), a federal agency that enforces antitrust and competition laws, brought this suit under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), seeking a preliminary injunction to halt Defendant Tempur Sealy International, Inc. ("Tempur Sealy") from consummating its proposed acquisition of Mattress Firm Group Inc. ("Mattress Firm") (the "Proposed Acquisition") while the FTC challenges the Proposed Acquisition's legality in a pending

administrative proceeding. The FTC alleges that it is likely to prove in the administrative proceeding that the Proposed Acquisition, if consummated, would violate Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the FTC Act, 15 U.S.C. § 45, and the balance of the equities favors an injunction. Defendants respond that the FTC is not entitled to a preliminary injunction because it cannot show that it is likely to succeed on the merits (*i.e.*, that the Proposed Acquisition is likely to substantially harm competition), that the sought injunction is in the public interest, or that the balance of equities favors the sought injunction.

Section 7 of the Clayton Act prohibits acquisitions, "where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. "Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest," this Court may preliminarily enjoin the acquisition. 15 U.S.C. § 53(b).

**b. Related cases.**

None.

    **c.  Narrowing factual issues.**

The parties are currently unaware of any such agreements or stipulations.

    **d.  Narrowing legal issues.**

The parties are currently unaware of any such agreements or motions.

    **e.  Class issues.**

None.

**4.  Parties.**

    **a.  Unserved parties.**

None.

    **b.  Additional parties.**

None.

    **c.  Interventions.**

None.

    **d.  Interested persons.**

None.

**5.  Discovery.**

    **a.  Initial disclosures.**

The parties have agreed to waive the requirement to exchange initial disclosures pursuant to Rule 26(a).

**b. Topics.**

The parties expect that discovery will encompass information relevant to the claims and defenses in this case. Other than conducting fact discovery before expert discovery, the parties do not anticipate conducting discovery in phases.

**c. Completed.**

In its investigation of the Proposed Acquisition (FTC. File No. 231-0031), the FTC obtained documents, written narrative responses, and testimony from Defendants and third parties. Defendants have not yet had the opportunity to conduct any discovery.

**d. Limitations.**

Requests for Production: No more than 30 requests for production shall be served on any party. The parties shall serve any objections to requests for the production of documents no later than 7 calendar days after the date of service of the document requests to which they assert objections. Within 3 calendar days of service of any such objections, the parties shall meet and confer in a good faith attempt to resolve the objections. **The parties shall substantially comply with requests for production no later than 28 calendar days after the date of service.** In response to any document requests, the parties need not produce to each

5

other in discovery in this case any documents previously produced by Defendants to the FTC in the course of the FTC's investigation of the Proposed Acquisition (FTC File No. 231-0016). The parties agree to make good faith efforts to produce documents expeditiously and on a rolling basis and to prioritize data productions. **The parties shall produce substantially all documents for each deponent by no later than 7 business days before the deponent's deposition.**

**Disputed Issue No. 1: Deadlines for Document Production**

**Issue:** Whether to include the FTC's proposed interim deadlines for the production of documents.

**FTC's Position:** Regarding timing of productions, the FTC proposes that the Parties should substantially comply with requests for production no later than 28 calendar days after the date of service. While we appreciate Defendants' commitment to produce material expeditiously in good faith, the FTC firmly believes that establishing a reasonable deadline for substantial compliance with requests for production is necessary. A deadline will ensure that the Parties receive discovery with sufficient time to understand and address any production issues and to facilitate the Parties' ability to use information contained in the discovery

6

for other aspects of the discovery process, such as to efficiently conduct depositions. The FTC does not anticipate that Defendants will have difficulty complying with a reasonable deadline to produce documents responsive to the targeted document requests that the FTC will issue in this case.

The FTC further requests that the Parties produce substantially all documents for each deponent by no later than 7 business days before the deponent's deposition. Absent a provision ensuring that Parties produce substantially all documents at least 7 business days before a deponent's deposition, deposing counsel may have insufficient, or no, opportunity to review the relevant discovery materials in advance of the deposition. As a result, depositions are likely to be less efficient and effective.

**Defendants' Position:** Defendants disagree that the FTC's proposed deadlines are appropriate. Until Defendants receive the FTC's requests for production, it is impossible to know how long it will take to substantially comply. For example, it took months (and over 4 million documents) to comply with the FTC's broad pre-complaint investigation requests. Nor do Defendants know when the FTC will issue its various document requests or when it will notice specific depositions, making it impossible for Defendants to

agree now to produce all requested documents for a specific custodian by that custodian's deposition. Defendants propose no specific deadline for producing documents but will produce documents as quickly as practicable and work in good faith with the FTC regarding document productions in advance of depositions.

Requests for Admission: Requests for admission are limited to 10 by the FTC to each Defendant, and to 15 by all Defendants collectively to the FTC. There shall be no limit on requests for admission for purposes of authentication or the admissibility of documents, data, or other evidence. The parties shall serve objections and responses to requests for admission no later than 14 calendar days after the date of service. Within 3 calendar days of service of any such objections, the parties shall meet and confer in a good faith attempt to resolve the objections. The parties shall then serve any further responses to requests for admission no later than 20 calendar days after service.

Interrogatories: Interrogatories are limited to 10 by the FTC to each Defendant, and to 15 by all Defendants collectively to the FTC. For purposes of this provision, every discrete subpart to an interrogatory will count as a separate interrogatory. The parties

shall serve objections and responses to interrogatories no later than 14 calendar days after the date of service. Within 3 calendar days of service of any such objections, the parties shall meet and confer in a good faith attempt to resolve the objections. The parties shall then serve any further responses no later than 20 calendar days after service.

Number of Depositions: Each side may depose any witness who is listed on either side's initial or final witness list; or who provides a declaration, letter of support, or affidavit related to this matter. Each side may take a maximum of 10 depositions beyond those listed on either side's initial or final witness list, and beyond those who provide a declaration, letter of support, or affidavit related to this matter. Cross-notices of depositions will not count against the above totals.

Format, time, and scheduling: All depositions, including depositions of fact and expert witnesses and 30(b)(6) depositions, shall last no more than 7 hours on the record. **All depositions, except for expert depositions and up to three (3) fact deposition per side, will occur remotely.** The parties will negotiate a deposition protocol to govern any remote depositions. If both Plaintiff and Defendants notice any third-party fact

deposition (including a 30(b)(6) fact deposition), they shall allocate the time evenly between them. If only one side notices a third-party fact deposition (including a 30(b)(6) deposition) the non-noticing party shall have 1 hour of questioning and the noticing party 6 hours of questioning. **For any witness from Serta Simmons or Purple that both sides notice, the parties will meet and confer about the overall length of the deposition and how the time will be divided.** For purposes of allocating deposition time, former employees, consultants, agents, contractors, and representatives of a Defendant are considered that Defendant's witness if they are represented by Defendants' counsel. Defendants may not subpoena or notice depositions of Defendants' witnesses. Unused time in any party's allocation of deposition time shall not transfer to the other party. The parties shall consult with each other prior to confirming any deposition to coordinate the time and place of the deposition. The parties shall use reasonable efforts to reduce the burden on witnesses noticed for depositions and to accommodate the witness's schedule.

## Disputed Issue No. 2: Remote Fact Depositions

**Issue:** Whether to limit how many fact depositions may be taken in person.

**<u>FTC's Position</u>**: Defendants' proposal to take any fact witness depositions in-person is inefficient and will unduly burden the Parties as well as the many third parties who will be deposed in this case.  First, this proposal will impose a heavy burden on third party witnesses. Remote depositions allow third parties to be deposed from a convenient location of their choosing and can allow them to have their outside attorneys (whose offices may be far from the third party) also attend remotely. In-person depositions demand that the witness either offer to host the deposition or travel to an outside location. Their counsel may be required to travel (incurring additional expense) to defend the witness in-person as well.

Second, this proposal will unduly burden the Parties. This preliminary injunction action has a very abbreviated discovery timeline—the Parties have agreed and proposed that discovery will close on September 20, 2024. At the same time, each side can take depositions of all persons on either side's 25-person initial fact witness list, anyone who provides a declaration, and up to 10 additional deponents. While the FTC fully intends to be judicious in the depositions that it notices, the proposal provides the opportunity for the Parties to easily depose more than 50

11

deponents. Moreover, the third parties in this case are scattered throughout the United States; to name just three, Serta Simmons is located in Georgia, Casper in New York, and Purple in Utah. It is inefficient and unnecessarily expensive for the attorneys in this case (particularly the attorneys who represent the government and utilize taxpayer money to fund litigation) to fly all over the country to take these depositions in-person.

Finally, Defendants' proposal that either side can choose to attend an in-person deposition remotely does nothing to cure these concerns. Third parties will still be subject to burdensome and unnecessary in-person depositions. Additionally, the hybrid approach favors the party attending in-person at the expense of the party needing to attend remotely. In contrast, remote depositions have been used consistently in litigations beginning during the pandemic and can be as substantively effective (and much more cost-effective) as in-person depositions.

**Defendants' Position:** There is no basis to limit how many depositions may be taken in person. Defendants will work with witnesses to reduce inconvenience and anticipate that some depositions may be remote. But in-person depositions—which have been the norm in U.S. litigation throughout history—are often

more effective. Indeed, FTC's complaint that the in-person attorney has the advantage in any hybrid situation proves as much. Defendants simply cannot agree to forego in-person depositions, particularly at this early stage. Defendants will not object to the FTC attending in-person depositions remotely if the FTC so wishes and will assist in making any relevant arrangements.

The FTC's concerns are overstated and inconsistent with the Rules. Having to sit for an in-person deposition imposes no greater burden on third parties than in any other civil litigation. Indeed, such depositions are routinely held where the non-party resides and, thus, are unlikely to pose any greater burden than a remote deposition. As to the FTC's own claimed burden, it can simply attend remotely, as it has done in other merger cases. Against that backdrop of minimal burden, the importance of this case, and the fact that the FTC has been able to conduct one-sided discovery for nearly two years, Defendants should be able to take discovery in the form that will be more effective for preparing their defenses.

The FTC's proposal also appears to be unprecedented. In approximately 20 FTC merger challenges since 2015, it seems that third-party depositions have been restricted in the case

13

management order to remote-only in just three cases.[1] Two of those occurred during the COVID-19 emergency, and all three were by stipulation of the parties. Defendants have found no other FTC merger case where the case management order prohibited defendants from taking third-party depositions in person.

## Disputed Issue No. 3: Allocation of Time for Purple and Serta Simmons Depositions

**Issue**: Deposition time for witnesses from Serta Simmons and Purple whom both sides notice.

**FTC's Position:** Defendants have no basis for their proposal that they need the option for an overlong deposition, or the option for more time than the FTC does, for **every** Serta Simmons and Purple witness.

The FTC conducted investigational hearings of two Purple employees—one in her personal capacity, and one of Purple as a corporate entity specifically to address Defendants' proposed remedies. Similarly, the FTC issued the equivalent of two Rule

---

[1] Statement at 11, Ex. 1, *FTC v. Intercontinental Exchange, Inc.*, No. 3:23-cv-01710 (N.D. Cal. April 21, 2023), ECF No. 26; Order at 8, *FTC v. Hackensack Meridian Health, Inc.*, No. 2:20-cv-18140 (D.N.J. Jan. 8, 2021), ECF No. 61; Order at 11–12, *FTC v. Peabody Energy Corp.*, No. 4:20-cv-00317 (E.D. Mo. May 7, 2020), ECF No. 131.

14

30(b)(6) notices (like Purple, one related solely to the proposed remedies) to Serta Simmons and Serta Simmons put up two witnesses. Neither of those witnesses testified for anywhere near 7 hours. For both Purple and Serta Simmons, the investigational hearing that focused on Defendants' proposed remedies each lasted around two hours.

There is no basis for Defendants to insist on more time than the FTC, or for an overlong deposition, to depose witnesses who were questioned for 2 hours about a discrete topic. Defendants assuredly also cannot explain why they need an overlong deposition, or more questioning time than the FTC, for Purple and Serta Simmons affiliated witnesses who were not previously deposed.

But, even had the FTC questioned each of the above witnesses for 7 hours—it did not come close to doing so—as a general matter that alone in the context of its merger investigation is no reason to restrict its questioning of potential trial witnesses in this litigation. Government investigations serve a purpose different from post-complaint discovery and cannot serve as a substitute for litigation discovery. *See SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("There is no authority which suggests that it is

appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case." (cleaned up)); *Abrams v. U.S. Dep't of Treasury*, 458 F. Supp. 2d 304, 308–09 (N.D. Tex. 2006) ("The purpose of an administrative investigation 'is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in them Administrator's judgment, the facts thus discovered should justify doing so.'" (quoting *Genuine Parts Co. v. FTC*, 445 F.2d 1382, 1388 (5th Cir. 1971)).

Second, the fact that, as demonstrated in the FTC's Complaint, Purple and Serta Simmons have been particular targets of Tempur Sealy for years does not warrant additional discovery of those entities' witnesses. The evidence of Tempur Sealy's attempts to displace those entities from the Mattress Firm floor and other retail floors resides with Tempur Sealy (and other retailers), not with Purple and Serta Simmons. And Purple and Serta Simmons are hardly the only suppliers who will be affected by Defendants' foreclosure plans, including those who are also floored at Mattress Firm and those that never will be floored at Mattress Firm should this merger go forward. Nor are Purple and Serta Simmons the only companies whose employees provided

testimony during the investigation. Defendants' proposal to disproportionally burden Purple and Serta Simmons with hours of additional deposition time is unwarranted.

**Defendants' Position:** For third parties that each side notices, Defendants generally agree to split time evenly for 7-hour depositions (3.5 hours per side). But Defendants cannot now agree to this split for witnesses from Serta Simmons and Purple, whom the FTC has already deposed without Defendants being present or even knowing about the depositions.

The FTC's Complaint presents a twice-narrowed theory of harm that focuses only on so-called "premium" mattress (that most Americans do not buy) sold at a single retailer (Mattress Firm). Although the focus of the antitrust laws is on the protection of competition, not the protection of individual competitors, the Complaint focuses on two competitor mattress companies that currently sell through Mattress Firm: Serta Simmons and, to a lesser extent, Purple. Those two companies are critical to the FTC's case, and the FTC has (via "investigational hearings") already deposed two witnesses from each company without Defendants' knowledge or attendance.

It would be unfair to limit Defendants to 3.5 hours of deposition time for these witnesses, while the FTC enjoys multiples of that time.

The FTC's suggestion that it would suffer "serious prejudice" from Defendants' proposal is unfounded. Defendants will meet and confer with the FTC, as well as counsel for the witnesses from Serta Simmons and Purple, when issuing deposition notices. At that time, the parties can discuss an appropriate time split and overall time for the deposition and bring any concern to the Court. At this point, Defendants are simply not in a position to agree to give up half of their deposition time under the Federal Rules for these witnesses and respectfully ask the Court not to impose such a requirement.

Notice: The parties may not serve a deposition notice with fewer than 10 calendar days' notice.

Rule 30(b)(6) depositions: The FTC shall not issue more than two 30(b)(6) deposition notices, for a total of 10 hours, to each Defendant. Defendants shall not collectively issue more than one 30(b)(6) deposition notice to the FTC. The FTC reserves its rights to object to the notice.

<u>Third-Party Subpoenas:</u> No party issuing a third-party subpoena for the production of documents or electronically stored information ("ESI") shall request a return date sooner than 7 calendar days after service. Every subpoena to a third party shall include a cover letter requesting that (1) the third party Bates-stamp each document with a production number and any applicable confidentiality designation prior to producing it and (2) the third party provide to the other parties copies of all productions at the same time as they are produced to the requesting party. Upon reasonable request from the third party, the requesting party shall provide such copies to the other parties within 3 business days of the requesting party receiving the materials from the third party, with the exception of data. Data shall be reproduced within 7 business days after it was received from a third party. Each party shall produce all materials received pursuant to an informal request, including any declarations or affidavits obtained from a third party, to the other parties within 3 business days of receiving those materials. Production shall occur in the format the materials were received, except that in the event a third party produces documents or ESI that are non-Bates-stamped, the party receiving the documents shall promptly Bates-

19

stamp the documents or ESI and produce them in an appropriate timeframe.

If a party serves a third party with a subpoena for the production of documents or other ESI and a subpoena commanding attendance at a deposition, the deposition date must be at least 7 calendar days after the return date for the document subpoena. To the extent a third-party deposition is properly noticed in accordance with the above and the third party's schedule cannot accommodate a deposition before the close of fact discovery, after consultation with all parties involved, despite good faith efforts for earlier scheduling, and for good cause, a later deposition may occur with the agreement of all sides. No party may unreasonably withhold agreement.

Declarations and Affidavits: No side may produce more than 15 total declarations or affidavits from party or third-party witnesses, except for declarations relating solely to authenticity and admissibility of exhibits. When providing a declaration or affidavit that may be submitted as evidence, other than those relating solely to authenticity and admissibility, the providing side must inform the other side in writing that the document may be submitted as evidence. No declarations or affidavits, other than declarations

20

relating solely to authenticity and admissibility of exhibits, will be admitted unless a fair opportunity was available to depose the signatory subsequent to serving the declaration or affidavit on the other side, unless otherwise agreed by the parties. In any event, no party or third-party declaration or affidavit may be submitted as evidence if it was executed or served less than 14 calendar days before the close of fact discovery. No party may submit as evidence a declaration or affidavit unless it is made under penalty of perjury.

Discovery uses: All discovery taken in the above-captioned litigation can be used in connection with the Part 3 administrative proceeding relating to Tempur Sealy's acquisition of Mattress Firm (FTC Docket No. 9433). Only discovery obtained by a party in the Part 3 administrative proceeding before the close of fact discovery in this proceeding may be used in the action before this Court.

Privilege Logs: The parties agree to modify the obligations of Federal Rule of Civil Procedure 26(b)(5)(A) to produce a log of privileged materials withheld from discovery taken in this action (excluding Defendants' productions made during the course of the FTC's pre-complaint investigation, FTC. File No. 231-0016). The

parties agree that the following documents and communications are subject to attorney-client privilege, work product protection, or other protection and shall not be the subject of discovery, need not be preserved, and need not be placed on a privileged log:

1) Documents or communications sent solely between outside counsel for Defendants;

2) Documents or communications sent solely between in-house counsel (acting in a purely legal capacity) or solely between in-house counsel (acting in a purely legal capacity) and outside counsel for either Defendant;

3) Documents or communications sent solely within the FTC;

4) Documents or communications sent between the FTC and state, local, or federal governmental agencies subject to law enforcement investigatory privilege, joint prosecution privilege, the work product doctrine, or any other applicable privilege or protection from disclosure; and

5) Materials exempted from disclosure under the Expert Materials provisions addressed below.

Inadvertent Production of Privileged Material: In accordance with Federal Rule of Civil Procedure 16(b)(3)(B)(iv) and Federal Rule of Evidence 502(d), inadvertent production of documents or

communications containing privileged information or attorney work product shall not be a basis for loss of privilege or protection of the inadvertently produced material, provided that the producing party notifies the receiving party within 3 business days of learning of the inadvertent production. When a party determines that it has inadvertently produced such material, it will notify other parties, who will promptly return, sequester, or delete the protected material from their document management systems. Within 5 business days of identifying inadvertently produced information or document(s), the party seeking claw-back of such materials shall provide a revised privilege log for the identified information or documents, if such logging is required by the privilege log provisions above. A party may move the Court for an order compelling production of the material, but such party may not assert as a ground for entering such an order the mere fact of inadvertent production. The party asserting the privilege may seek to file its opposition under seal and must submit a copy of the material in question for *in camera* review.

<u>Attorney Work Product:</u> The parties will neither request nor seek to compel the production of any privileged interview notes, interview memoranda, or recitation of information contained in

such notes or memoranda, created by the FTC, including its employees and agents, or any Defendant's outside counsel, except as specified in the Privilege Log provisions addressed above. Nothing in these provisions requires the production of any party's attorney work-product, confidential attorney-client communications, communications with or information provided to any potentially or actually retained expert, except as addressed above, or materials subject to the deliberative-process privilege or any other privilege.

<u>Expert Disclosures:</u> Expert disclosures, including each side's expert report(s), shall comply with the requirements of Federal Rule of Civil Procedure 26(a)(2), except as modified herein.

Neither side must preserve or disclose, including in expert deposition testimony, the following documents or materials:

- any form of communication or work product shared between the FTC and their expert(s), persons assisting the expert(s), or consultants;

- any form of communication or work product shared between any Defendant's counsel and their expert(s), persons assisting the expert(s), or consultants;

- any form of communication or work product shared between or among an expert(s), persons assisting the expert(s), or consultants;

- any work product of any persons assisting the expert(s) or consultants;

- expert's notes, unless they are cited in support of an opinion or fact;

- drafts of expert reports, analyses, or other work product, or data formulations, data runs, data analyses, or any database-related operations not relied upon by the expert in the opinions contained in his or her final report, except as set forth in the following paragraph.

The parties must disclose the following materials with all expert reports:

- a list by Bates number of all produced documents relied upon by the expert(s); a list of all other materials relied on by the expert(s); and copies of any materials relied upon by the expert(s) not previously produced that are not available publicly and without cost (in the case of book citations, the parties must produce complete chapters that include the relevant citation);

25

- for any calculations appearing in the report, all data and programs underlying the calculation, including all programs and codes necessary to recreate the calculation from the initial ("raw") data files; and

- any communication from a party representative or party's counsel that forms the sole basis for an opinion, assumption, or fact stated in the expert's report(s) and hearing or deposition testimony.

<u>Limitation on Experts:</u> Each side may disclose no more than 2 expert witnesses.

<u>Expert Depositions:</u> One 7-hour deposition of each expert shall be allowed.

**e. Preservation.**

None.

**f. Disputes.**

None.

## 6. Orders.

### a. Scheduling and docket control order.

The parties respectfully request that the Court enter the attached Proposed Scheduling and Docket Control Order. This would allow the Court to resolve the FTC's forthcoming preliminary-injunction

motion before the Defendants' purchase agreement expires on February 9, 2024, and it would avoid simultaneous proceedings in this litigation and the Part 3 administrative hearing (currently scheduled to commence on December 4, 2024).

**b. Protective order.**

On July 8, 2024, the parties jointly requested the entry of a protective order. *See* ECF No. 38. The Court entered the Order on July 16, 2024. *See* ECF No. 43.

**c. E-discovery order.**

The parties do not require an e-discovery order. They have agreed to the following as it relates to electronically stored information ("ESI").

The parties agree that discovery in this case will include ESI. All parties will request ESI in the form or forms that facilitate efficient review of ESI. In general, the parties will produce ESI according to the same ESI technical specifications used by Defendants in the FTC's pre-complaint investigation (FTC File No. 231-0047) and, upon reasonable request from the receiving party, a reasonable volume of pdfs will be produced as colored copies.

**7. Settlement.**

Defendants remain willing to engage in settlement discussions and to find a solution satisfactory to all parties. The FTC also remains willing to engage in settlement discussions should Defendants make any settlement proposals or offers.

**8. Trial.**

    **a. Magistrate Judge.**

    The parties do not consent to referring this case to Magistrate Judge Christina A. Bryan for all purposes, including the evidentiary hearing.

    **b. Jury demand.**

    No jury demand has been made.

    **c. Length of trial.**

    The parties propose an evidentiary hearing of 45 hours, to be split evenly between each side. Time used during both direct examination and cross-examination of witnesses will count against the party conducting the examination. Unused time by one side shall not revert to the other. Plaintiff may request to reserve a portion of its time for rebuttal.

**9. Pending motions.**

The parties have filed *pro hac vice* motions that are pending.

**10.    Other matters**

**a. Preliminary-injunction and post-hearing briefing.**

The parties agree that Plaintiff's motion for a preliminary injunction and Defendants' opposition to that motion will not exceed 10,000 words, and Plaintiff's reply memorandum in further support of its motion for a preliminary injunction will not exceed 4,000 words. Word limits to be calculated pursuant to Court Procedures Section 18.

The parties agree that they may also file one motion under Federal Rule of Evidence 702 for each expert identified by the other side, not to exceed 4,500 words. Any response to such motion shall not exceed 4,500 words.

Each side's proposed findings of fact and conclusions of law shall not exceed 20,000 words. The parties agree that each side may file a post-hearing brief not to exceed 10,000 words. The parties recognize that there may be material overlap between proposed findings of fact and conclusions of law and post-hearing briefs and defer to the Court's wishes about what would be most helpful.

29

### b. Initial Fact Witness Lists

The parties agree that they shall exchange initial fact witness lists no later than 5:00 p.m. Eastern Time on the date listed in the scheduling order. Initial fact witness lists shall be limited to 25 witnesses per side and summarize the general topics of each witness's anticipated testimony. The initial witness list shall include the name of the employer of each witness and a description of the responsibilities of any third-party witness, to the extent known.

### c. Final Witness Lists

In addition to Section 23 of the Court's Procedures, the parties agree that final witness lists shall be exchanged no later than 5:00 p.m. Eastern Time on the date listed in the scheduling order. Final witness lists shall be limited to **15 (FTC)/20 (Defendants)** witnesses per side, inclusive of both fact and expert witnesses and, in accordance with the Court's rules, shall include a concise summary of the expected testimonial topics. Only a witness who appears on a side's initial fact witness list, has been disclosed as an expert witness, or who has been deposed in this matter may be included on that side's final witness list.

The initial and final witness lists shall represent a good faith effort to identify all witnesses the producing side expects that it may present at the evidentiary hearing, other than solely for impeachment. Additional witnesses may be added to the final witness list after the date listed in the scheduling order, only by agreement of the parties or with leave of the Court for good cause shown.

**Disputed Issue No. 4: Number of Witnesses on Final Witness Lists**

**Issue**: Whether to limit the final witness list to 15 or 20 witnesses per side.

**FTC's Position:** The Defendants' proposal that final witness lists include 20 witnesses per side is overbroad in the context of this preliminary injunction proceeding. The FTC seeks preliminary injunctive relief under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), to prevent consummation of Tempur Sealy's proposed acquisition of Mattress Firm until the Commission has the opportunity to adjudicate the merger's legality in an administrative proceeding.  Under 13(b), this Court should issue a preliminary injunction enjoining the merger upon a "proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be

in the public interest." 15 U.S.C. § 53(b). Importantly, the preliminary injunction proceeding will not require a decision as to whether Defendants' proposed acquisition actually violates Section 7 of the Clayton Act, 15 U.S.C. § 18. Instead, that decision will be made in an administrative proceeding scheduled to begin on December 4, 2024.

Accordingly, there is simply no need for 20 witnesses per side in this preliminary injunction hearing. The FTC's proposal that final witness lists be limited to 15 witnesses per side is consistent with the nature of this proceeding.

Defendants have suggested that they do not intend to actually call 20 witnesses at the hearing given the time constraints agreed to by the Parties, but that they must list 20 witnesses on their list because they have not yet had the opportunity to take discovery. That does not counsel in favor of Defendants' overbroad proposal. Final witness lists are not due until October 16, 2024 under the proposed schedule and the Parties will have completed all fact and most of expert discovery by that time. Defendants should have no problem limiting their final witness list to a reasonable number by then.

Moreover, a presumptive limit of 15 witnesses per side will not prejudice Defendants. Additional witnesses may be added to the final witness list after the date listed in the scheduling order by agreement of the parties or with leave of the Court for good cause shown. In contrast, allowing the parties to list witnesses that they do not intend to call at the hearing is wasteful and inefficient. While the listing side may know that a witness is unlikely to testify, the other side will expend unnecessary time and expense preparing to cross examine that witness, distracting from necessary tasks. That type of litigation gamesmanship is unwarranted here.

**Defendants' Position:** On July 16, Defendants received the FTC's pre-complaint investigative file, which reflects that the FTC sought and received documents and testimony from dozens of third parties. In its initial disclosures in the parallel administrative process, the FTC identified over 110 third parties (*i.e.*, a large swath of the entire mattress industry) it believes have discoverable information. And the FTC's pre-complaint investigative file demonstrates an effort to obtain documents and testimony from dozens of these parties, including 16 depositions and 2 declarations. Defendants are just now beginning to process the

investigative file and those initial disclosures and, thus, are seeking flexibility on the number of witnesses for the eventual hearing. Moreover, as discussed further below, Defendants believe that live testimony is more useful than the mass admission of numerous investigational-hearing (often *ex parte*) and deposition transcripts, as the FTC proposes. And, because the FTC must establish harm to competition, not individual competitors, it will be important for the Court to hear from third parties. Accordingly, Defendants believe a limit of 20 witnesses rather than 15 is appropriate.

As Defendants previously told the FTC, it is unclear whether Defendants will ultimately call 20 witnesses, but Defendants should not be limited at this stage to a lower number given that the FTC has conducted one-sided discovery for two years, and Defendants are only now getting access to that discovery. The FTC also suggests that Defendants do not need 20 witnesses because this is only a preliminary injunction hearing. But in almost every FTC-led merger litigation, the court's decision on the preliminary injunction proves permanent.

At bottom, the preliminary-injunction hearing and this Court's decision will be enormously important, and Defendants

should have the opportunity to call the witnesses necessary to their defense and should not be limited to 15 witnesses at this time.

### d. Exhibit Lists

In addition to Section 22 of the Court's Procedures, each side shall notify third parties whose confidential information appear on that side's exhibit list on the date listed in the scheduling order to allow third parties sufficient time to request *in camera* treatment of its confidential information.

**In accordance with the Court's rules, each side will include on its exhibit list only those exhibits intended in good faith for use in the hearing or in pre- or post-hearing briefing or findings of fact.  (FTC)**

**The total number of exhibits for each side, including exhibits introduced during investigational hearings or depositions, shall not exceed 300.  (Defendants)**

## Disputed Issue No. 5: Exhibit List Cap

**<u>Issue</u>**: Whether to accept the FTC or Defendants' proposal for limitations to the exhibit list.

**<u>FTC's Position</u>:** The FTC's proposal is consistent with both this Court's procedures and the scope of this Court's mandate under

Section 13(b) of the FTC Act. In contrast, Defendants' self-serving proposal—which would artificially limit exhibits to 300 per side—is untethered to the needs of the case and would unreasonably restrict this Court from considering all of the evidence to which this Court is entitled.

First, the FTC's position is fully consistent with this Court's Procedures, which require good faith but do not include any numerical limits.  In jury trials, for example, this Court requires Parties to "list only those exhibits intended in good faith for use before the jury during trial."  Section 22(a). In this hearing, where the Court can consider evidence presented during the hearing and in briefing, the FTC consistently proposes to limit exhibits to those that in good faith will be used in the hearing or in related briefing or findings of fact.  These good faith limits will reduce any burden on the Parties, third parties, and the Court while allowing the Court the opportunity to consider the full weight of evidence presented both live in the hearing and as supplemented through the briefing and findings of fact.

Second, and as described above, the FTC brought this case under Section 13(b) of the FTC Act, which asks this Court to consider the Commission's likelihood of success in bringing its

merits case in an administrative proceeding. Importantly, the Administrative Law Judge in that proceeding does not have any limits on the number of exhibits that the Parties may submit in that case. Defendants' proposed limit will restrict this Court from considering evidence that will be part of the merits trial and may hamper this Court's ability to consider the FTC's likelihood of success in that case. Accordingly, while exhibit caps may be appropriate in preliminary injunction actions brought outside the 13(b) context, in similar 13(b) actions, courts have accepted far more than the 600 total exhibits that Defendants propose here. *See, e.g., FTC v. IQVIA Holdings Inc.*, 2024 WL 81232, at *1 (S.D.N.Y. Jan. 8, 2024) ("The parties also submitted thousands of exhibits for the Court's consideration.").

Moreover, Defendants' proposal is facially self-serving. They argue for more witnesses and sought a longer hearing (the Parties compromised at 45 hours), but want to restrict ordinary-course evidence from being introduced at the hearing or used in briefing and findings of fact. They do so because, as the FTC's Complaint makes plain, their own documents demonstrate that the FTC has a strong likelihood of success on the merits. Defendants should not

be allowed to preclude this Court from considering that important evidence through an arbitrary and unreasonably low exhibit cap.

The FTC is committed to reasonable limits on exhibit lists by only including exhibits intended in good faith for use in the hearing or in pre- or post- hearing briefing or findings of fact. But there is no need for arbitrary limits that will constrain the FTC's ability to prosecute its case and restrict this Court from considering the same evidence that the Administrative Law Judge can consider in the merits trial.

**Defendants' Position:** Defendants propose that the total number of exhibits for each side, including exhibits introduced during investigational hearings or depositions that are used at the hearing, be limited to 300. This is within the range of exhibit limits in other government-merger litigations.

A limit of 300 exhibits is more than sufficient in a hearing in which each side gets 22.5 hours to present its case. Without any cap, the exhibit exchange-and-objection process will become highly burdensome and wasteful for parties, third parties, and for the Court, which will have to resolve objections. And although the FTC claims the cap is "self-serving," it is difficult to see how. The cap applies to both sides equally and also benefits both sides and the

Court by requiring the parties to present a disciplined case focused on the most important documents, rather than flooding the Court with thousands of exhibits that are ultimately never used at the hearing.

The FTC's reliance on Section 13(b) of the FTC Act is misplaced. As discussed further below, before this Court can grant the FTC's requested preliminary injunction, it must determine that there is a "likelihood of ultimate success" on the merits, weigh the equities, and determine that the injunction would be in the public interest. 15 U.S.C. § 53(b). Nothing in that statute suggests that this Court cannot manage its own hearings in the manner most efficient and helpful to reaching a decision on the requested preliminary injunction.

Further, the FTC's proposed compromise is no compromise at all. The FTC commits to list only those exhibits that it intends to introduce at the hearing *or in its proposed findings of fact and conclusions of law*. This effectively places no limits on the FTC and indeed encourages the very thing the exhibit cap is supposed to prevent—post-hearing filings that bear little resemblance to the hearing and that require the Court to wade through string cites of exhibits and make credibility determinations without live

testimony. Indeed, the FTC proposes that all exhibits used during investigational hearings and depositions be automatically admitted, and there are nearly 300 exhibits from the pre-complaint investigational hearings alone. Against that backdrop, the necessity for some limit is clear.

**Full transcripts of investigational hearings or depositions taken in the FTC's investigation of the Proposed Acquisition (FTC. File No. 231-0031) and this litigation shall be admitted into evidence for use in any legal brief and any Proposed Findings of Fact and Conclusions of Law. To the extent that a party cites investigational hearing or deposition testimony in a legal brief or in support of a proposed finding of fact, the opposing party will have the opportunity to submit evidentiary objections to the cited testimony to the Court, and the Court will assess as necessary those objections and any objections preserved on the record in the deposition in determining whether to accept that testimony. No party will seek to introduce any deposition testimony by video at the evidentiary hearing.**

## Disputed Issue No. 6: Admissibility of Deposition and Investigational Hearing Testimony; Deposition Designations

**Issue**: Whether all investigational-hearing transcripts and deposition transcripts should be automatically admissible into evidence and whether they should be citable in post-hearing briefs and proposed findings of fact and conclusions of law, regardless of whether they were used at the hearing.

**FTC's Position:** The nature of this proceeding supports the admission into evidence of investigational hearings and deposition transcripts.

As with exhibits, this Court should avail itself of a record consistent with that available to the Administrative Law Judge that will preside over the merits hearing. In administrative hearings, investigational hearings and deposition transcripts are presumptively admitted. *See* 16 C.F.R. § 3.43 ("If otherwise meeting the standards for admissibility described in this paragraph, depositions, investigational hearings, prior testimony in Commission or other proceedings, expert reports, and any other form of hearsay, shall be admissible and shall not be excluded solely on the ground that they are or contain hearsay."). There is no reason for Defendants to prevent this Court from considering

41

the full record that will be available to the Administrative Law
Judge.

Defendants' objections to the presumed admissibility of
investigational hearing and deposition testimony are unwarranted.
In meet and confer discussions, Defendants objected based on
concerns regarding their ability to object to specific testimony. The
FTC proposed a process to allow for raising and consideration of
objections, but Defendants refused the FTC's offer without
explanation. Moreover, this is a bench proceeding and there is no
reason to engage in a time-consuming deposition designation
process prior to the hearing. Unlike in a jury trial, the Court will
both decide the objections and weigh and consider testimony. The
more efficient path is for the parties to provide objections to
testimony that is used in pre- and post-hearing briefs and findings
of fact so that the Court can engage in both tasks at once, rather
than seriatim processes.

**<u>Defendants' Position</u>:** Defendants disagree that the FTC should
be allowed to enter into the record *en masse* all investigational
hearing and deposition testimony, along with all documents
discussed therein. The FTC apparently intends to rely on those
thousands of pages of testimony (and exhibits) in its proposed

findings of fact and conclusions of law, regardless of whether the testimony was ever referenced or had any relationship to the evidence submitted at the hearing itself. This will require the Court to evaluate this newly cited evidence post-hearing without any context or live testimony. Nor is it clear how objections to such evidence would be resolved. The FTC's proposal is also at odds with the Court's own Procedures, which establishes a process and narrow presumptive limits for deposition designations. *See* Procedure 24. Importantly, Defendants were not present for the investigational hearings of third parties and had no opportunity to raise objections or ask questions. To potentially enjoin Defendants' proposed transaction on that sort of evidence raises serious fairness and Due Process issues.

The FTC's reliance on the parallel administrative process is misplaced. In Section 13(b) of the FTC Act, Congress required the FTC to come to a district court to obtain a preliminary injunction. 15 U.S.C. 53(b). Nothing in that provision—or any other provision—suggests that the Court can or should jettison the Federal Rules, its own rules, or tried-and-true techniques of judicial management (like deposition designations). To the contrary, by expressly requiring the Court to consider the FTC's

likelihood of ultimate success, the equities, and the public interest, Congress was clear that, except for irreparable injury, it expects this Court to evaluate the FTC's request for a preliminary injunction just like any other request for a preliminary injunction. *See, e.g., Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1575 (2024) (holding that, absent a clear command from Congress, there must be a "clear showing" of a likelihood of success on the merits to obtain a preliminary injunction). Indeed, rather than abandon its traditional role, as the FTC suggests, courts have held that "the court must exercise its independent judgment and evaluate the FTC's case and evidence on the merits." *FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069, 1084 (N.D. Cal. July 10, 2023).

Separately, the FTC's argument fails on its own logic. It is too early to know what evidence Judge Chappell will accept at the administrative hearing. Indeed, the parties may not know the answer to that question even by the time of the hearing here. Moreover, considering that recent changes to the FTC's regulations make clear that Judge Chappell can only issue a "recommended" decision, see 16 C.F.R. § 3.51, and that the statute instructs this court to consider the "likelihood of *ultimate* success,"

44

15 U.S.C. § 53(b) (emphasis added), it makes little sense to make the December administrative hearing this Court's lodestar.

**e.  In Camera Designations**

Parties and third parties shall submit any requests for *in camera* treatment of demonstratives and/or exhibits by the date listed in the scheduling order. Each party and third party is responsible for requesting *in camera* treatment of its own confidential materials and information regardless of which side's exhibit list the materials or information appear on. Requests for *in camera* treatment shall be made in the form of a motion to the Court not to exceed 2,500 words.

**f.  Presumptions of Authenticity**

The parties agree that documents produced by third parties from the third parties' files shall be presumed to be authentic within the meaning of Federal Rule of Evidence 901. Any good-faith objection to a document's authenticity must be provided with the exchange of other objections to hearing exhibits. If a party serves a specific good faith written objection to the document's authenticity, the presumption of authenticity will no longer apply to that document and the parties will promptly meet and confer to attempt to resolve

any objection. The Court will resolve any objections that are not resolved through this means or through the discovery process.

The parties agree that all documents produced by a Defendant either in response to document requests in this litigation, the Part 3 administrative proceeding relating to Tempur Sealy's acquisition of Mattress Firm (FTC Docket No. 9433), or in the course of the FTC's pre-complaint investigation of the Proposed Acquisition (FTC File No. 231-0031) are presumed to be authentic.

The parties agree that any party may challenge the authenticity of a document for good cause shown, and if necessary, may take discovery related solely to authenticity of documents.

### g. Nationwide Service of Process

Considering the geographic dispersion of potential witnesses in this action, the parties request that they be allowed nationwide service of process of discovery and evidentiary hearing subpoenas pursuant to Federal Rule of Civil Procedure 45 and 15 U.S.C. § 23, to issue from this Court that may run into any other federal district requiring witnesses to attend this Court. The availability of nationwide service of process, however, does not make a witness who is otherwise "unavailable" for purposes of Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 available under

these rules regarding the use at the hearing of a deposition taken

in this action.

July 22, 2024          */s/ Allyson M. Maltas*
                      Allyson M. Maltas
                      Federal Trade Commission
                      600 Pennsylvania Ave., NW
                      Washington, D.C. 20580
                      202-326-3646
                      amaltas@ftc.gov


July 22, 2024          */s/ Ryan A. Shores*
                      Ryan A. Shores
                      Cleary Gottlieb Steen & Hamilton LLP
                      2112 Pennsylvania Ave., NW
                      Washington, D.C. 20037
                      202-974-1500
                      rshores@cgsh.com

July 22, 2024          */s/ Sara Y. Razi*
                      Sara Y. Razi
                      Simpson Thacher & Bartlett LLP
                      900 G Street, NW
                      Washington, D.C. 20001
                      202-636-5500
                      sara.razi@stblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I caused the foregoing document to be served on all counsel of record using the ECF system of the United States District Court for the Southern District of Texas.

*/s/ Allyson M. Maltas*
Allyson M. Maltas
Attorney-in-Charge
DC Bar No. 494566 *(Pro Hac Vice)*
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov

*Counsel for Plaintiff*
*Federal Trade Commission*