## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| Federal Trade Commission,<br>　　　　　　　　Plaintiff, | Civil Action No. 4:24-cv-02508 |
| vs. | Judge Charles Eskridge |
| Tempur Sealy International, Inc.,<br>*et al.*,<br>　　　　　　　　Defendants. | |

## DEFENDANT TEMPUR SEALY INTERNATIONAL'S ANSWER

Pursuant to Federal Rule of Civil Procedure 8, Defendant Tempur Sealy International hereby answers the FTC's Complaint.

### Introduction

Tempur Sealy, a mattress manufacturer, proposes acquiring Mattress Firm, a mattress retailer. Like most vertical mergers, the proposed transaction is procompetitive. It will enhance competition, increase innovation, and reduce costs—all to the benefit of American consumers.

The Complaint raises no concerns about any loss of horizontal, head-to-head competition. It does not claim that this merger will affect the vast majority of mattress retailers, of whom there are thousands (not even counting Amazon or other internet sellers). Nor does it allege that the merger will have

1

any impact on the vast majority of mattress manufacturers, most of whom sell little or nothing through Mattress Firm. And the Complaint concedes that this transaction will have no effect on competition for the vast majority of mattress sales—*i.e.*, the less expensive, "non-premium" mattresses that most Americans buy.

So, what, then, is the Complaint about? Rather than show harm to competition, the Complaint alleges potential harm to the tiny handful of mattress manufacturers who use Mattress Firm. In truth, that handful is just Serta Simmons—the only mattress manufacturer other than Tempur Sealy who uses Mattress Firm as a nationwide retail outlet. The Complaint then gets even narrower. It claims that the affected "market" is limited to a small and ill-defined slice of the mattress industry: "premium" mattresses, which apparently are expensive mattresses that most customers do not buy. But the Complaint's claims about even this twice-narrowed sliver of mattress competition are at odds with reality.

*First*, the FTC's case rests on the idea that the proposed transaction will cut off access to a critical mattress retailer. Yet, the Complaint provides no information about Mattress Firm's share of any mattress retail market, let alone of the FTC's vague "premium" mattress category. Instead, the Complaint musters only an *ad hoc* estimate that ▮ of mattress shoppers "visit" Mattress Firm—not that they *buy* any mattresses, "premium" or otherwise,

from Mattress Firm. Indeed, only a fraction of those who "visit" a store will purchase a mattress there, and customers often visit many retailers before making a purchase.

Given the thousands of mattress retailers, the prevalence of online sales, and the many "premium" brands that rely mostly on their own retail operations, it is not surprising that the Complaint fails to allege anything about market share or the amount of foreclosure. Mattress suppliers can sell to mattress-specialty retailers (like Texas Mattress Makers, Mancini's Sleepworld, or Mattress Warehouse), to furniture stores (like Ashley, Gallery Furniture, or American Furniture Warehouse), to online markets (like Amazon), to department stores (like Macy's), to big-box stores (like Wal-Mart or Big Lots), to warehouse stores (like Costco), and many more.

Mattress suppliers can also sell directly to customers. For example, as the Complaint concedes, Sleep Number, the third-largest mattress manufacturer in the US and the second largest "premium" mattress manufacturer, sells its mattresses *only* through its own stores. And many other manufacturers have followed Sleep Number's playbook, including Avocado, Saatva, Helix, and Brooklyn Bedding. Against that economic reality, the Complaint's heavy reliance on alleged statements that Mattress Firm is a "kingmaker" falls short. For example, Purple achieved success long before it

3

was sold in Mattress Firm, was courted by Mattress Firm (not the other way around), and still is only in about half of Mattress Firm stores.

*Second*, documents, public statements, witness testimony, and Tempur Sealy's past retailer acquisitions all show that Tempur Sealy has neither the incentive nor the plan to abandon Mattress Firm's successful multi-brand strategy. Tempur Sealy's internal transaction analyses assumed that Mattress Firm would remain a multi-brand retailer, which is consistent with Tempur Sealy's public statements to investors and post-merger supply agreements. Moreover, once vertically integrated, most of the combined company's sales will come from the *retail* side of the business. Tempur Sealy thus has no incentive to upend the strategy that has made Mattress Firm successful. Further, through more than a dozen investigational hearings, witnesses consistently testified that Tempur Sealy would not remove or disadvantage other mattress suppliers from Mattress Firm. And when Tempur Sealy has bought other successful multi-brand mattress retailers, it has kept them multi-branded. For these reasons, the Complaint's dependence on Tempur Sealy's vigorous prior competition with its horizontal rivals is misplaced. Vigorous horizontal competition is not only not illegal, it is the very thing antitrust law seeks to protect. And it is not predictive of how a vertically integrated firm will act.

*Third*, the Complaint ignores the fact that Tempur Sealy has guaranteed the very distribution that the Complaint claims it will somehow deny. Tempur

Sealy has committed to reserve ███████████ mattress "slots" at Mattress Firm for third-party mattresses ████████████ It has entered into post-merger supply agreements with various mattress suppliers, including Purple, and ██████████████████████████████████████████. And it has committed to divest nearly 200 Mattress Firm and Sleep Outfitters stores ██████████████████████████████████████████████ If Tempur Sealy's plan were truly to deny distribution to rivals like Serta Simmons, it has made it awfully difficult to accomplish that goal.

*Fourth*, the Complaint is plagued by other key omissions. For example, the Complaint lacks a cogent product-market definition, which gets no more specific than somewhere between "entry level" and the "most expensive" mattresses. What price points are included? Who makes these mattresses? What market shares are associated with the mattress manufacturers and retailers? The Complaint never says. And the reason for these omissions is obvious. The Complaint's allegations are at odds with the actual state of competition in the mattress industry.

In sum, considering the factual and economic realities of the proposed transaction, the FTC is not entitled to a preliminary injunction.

## **Response to the Complaint's Specific Allegations**

All allegations not expressly admitted herein are denied. Further, any allegation relying on the terms "premium mattress" or "premium mattress

5

market" are denied on the ground that those terms are vague and intertwined with legal conclusions. Tempur Sealy does not interpret the introduction, headings, or subheadings in the Complaint as well-pleaded allegations to which any response is required. To the extent such a response is required, they are denied. Tempur Sealy reserves the right to amend and/or supplement this Answer.

Each paragraph below corresponds to the same-numbered paragraph in the Complaint:

1.      As to the first sentence, Tempur Sealy admits that it believes it is the world's largest bedding provider. As to the second sentence, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mattress Firm's size; Tempur Sealy otherwise denies the allegations of the second sentence. As to the third sentence, Tempur Sealy admits that Mattress Firm advertises that it has over 2,300 locations; Tempur Sealy otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the quote in the fourth sentence and otherwise denies the allegations of the fourth sentence.

2.      Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence. As to the second

sentence, Tempur Sealy admits that at one time Mattress Firm made that estimate, but Tempur Sealy otherwise denies the allegations.

3.      As to the first sentence, Tempur Sealy admits that Mattress Firm offers a wide range of mattresses; the phrase "all but the most expensive price points" is vague and Tempur Sealy denies the remaining allegations on that ground. Tempur Sealy denies the allegations in the second sentence. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence. Tempur Sealy denies the allegations in the fourth and fifth sentences. The sixth sentence's use of "significant" and "premium" is vague, therefore Tempur Sealy denies those allegations on that ground; further, the sixth sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content and also denies the characterization of that document as misleading. As to the seventh sentence, the use of "premium" is vague, and Tempur Sealy denies the allegations. Tempur Sealy denies the allegations in the eighth sentence. As to the ninth sentence, the use of "premium" is vague and Tempur Sealy denies the allegations on that ground; otherwise, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the ninth sentence.

4.      Tempur Sealy denies the allegations in the first sentence. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in the second sentence. Tempur Sealy admits that its overall revenue has grown since 2019 but otherwise denies the allegations in the third sentence. Tempur Sealy denies the allegations in the fourth sentence.

5.      Tempur Sealy denies the allegations in the first and second sentences. The third sentence and the following graphic purport to quote and show a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content; further, the allegations in the third sentence are misleading and the weight of evidence shows that the note is not reflective of Tempur Sealy's intent or incentive. The fourth sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content.

6.      Tempur Sealy denies the allegations in the first, second, and third sentences. The fourth and fifth sentences purport to quote documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content; further, the quotes are misleading and unrepresentative of Tempur Sealy's intent and incentives.

7.      Tempur Sealy denies the allegations in the first sentence. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence. Tempur Sealy denies the allegations in the third sentence. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence; further,

8

the fourth sentence purports to quote documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of its content.

8.      Tempur Sealy denies the allegations in the first sentence. Tempur Sealy admits that, as a horizontal competitor, it has competed vigorously for floor space with other brands at Mattress Firm but otherwise denies the allegations in the second sentence. As to the third sentence, Tempur Sealy admits that there was an informal agreement with Mattress Firm not to carry Casper to resolve an outstanding issue with co-op advertising funds. Tempur Sealy admits that it has, as a horizontal competitor, competed vigorously with Purple for floor space but otherwise denies the allegations in the fourth sentence. Tempur Sealy admits that Mattress Firm still carries Purple mattresses but otherwise denies the allegations in the fifth sentence.

9.      Denied.

10.     Tempur Sealy denies the allegations in the first sentence. The second sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content.

11.     Denied.

12.     Tempur Sealy denies the allegations in the first sentence. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence; further, the use of the term "premium"

is vague and Tempur Sealy denies the allegations on that ground. Tempur Sealy denies the allegations in the third sentence. The fourth sentence purports to characterize contracts, and Tempur Sealy respectfully refers the Court to those contracts for a full and accurate view of their content. Tempur Sealy denies the allegations in the fifth sentence.

13.    Denied.

14.    Denied.

15.    Denied.

16.    Tempur Sealy admits that the FTC filed an administrative action on July 2, 2024, that is ongoing. Otherwise, Paragraph 16 reflects legal assertions that require no response; to the extent a response is required, those assertions are denied.

17.    Tempur Sealy admits that the parties stipulated to a temporary restraining order, which this Court entered. Otherwise, Tempur Sealy responds that the Order speaks for itself.

18.    Paragraph 18 contains a legal assertion that requires no response; to the extent a response is required, Tempur Sealy denies the allegations. Further, the characterization of Section 13(b) is incorrect: to grant the FTC's requested preliminary injunction, the Court must conclude that the FTC has made a clear showing establishing a "likelihood of ultimate success," conclude

that the public interest favors the injunction, and weigh the equities. *See* 15 U.S.C. § 53(b); *see also Starbucks Corp. v. McKinney*, 144 S. Ct. 1570 (2024).

19.     Denied.

20.     Paragraph 20 contains a legal assertion that requires no response; Tempur Sealy does not contest this Court's jurisdiction.

21.     Paragraph 21 contains a legal assertion that requires no response; Tempur Sealy otherwise responds that Section 13(b) of the FTC Act speaks for itself.

22.     Paragraph 22 contains a legal assertion that requires no response; Tempur Sealy does not dispute that the proposed transaction is subject to Section 7 of the Clayton Act.

23.     Paragraph 23 contains a legal assertion that requires no response; Tempur Sealy admits that is engaged in commerce in Texas.

24.     Paragraph 24 contains a legal assertion that requires no response; Tempur Sealy does not contest this Court's personal jurisdiction.

25.     Paragraph 25 contains a legal assertion that requires no response; Tempur Sealy does not contest service of process or venue.

26.     Admitted.

27.      Tempur Sealy admits the allegations in the first sentence. As to the second sentence, Tempur Sealy admits that Tempur-Pedic International and Sealy Corp. merged in 2013 and that Tempur Sealy believes it is the

largest bedding supplier in the world. Tempur Sealy admits the allegations in the third sentence. Tempur Sealy admits that it had approximately $4.9 billion in sales in 2023, of which approximately $3.8 billion were in North America; it otherwise denies the allegations in the fourth sentence. Tempur Sealy admits that it sells mattresses under the Sealy, Tempur-Pedic, and Stearns & Foster brands and that it believes Sealy and Tempur-Pedic are, respectively, the number-one and number-two US brands by sales revenue; it otherwise lacks the knowledge and information sufficient to form a view as to the truth of the allegations in the fifth sentence. As to the allegations in the sixth sentence, Tempur Sealy admits that it owns approximately 99 Tempur-Pedic stores and approximately 109 Sleep Outfitters stores. As to the allegations in the seventh sentence, Tempur Sealy admits that in 2023 it generated approximately $3.7 billion via the wholesale channel and approximately $1.1 billion via the direct channel. Tempur Sealy admits that it has conducted acquisitions; otherwise, the allegations in the eighth sentence are vague and Tempur Sealy denies them on that ground. As to the ninth sentence, Tempur Sealy admits that it has acquired Sherwood Bedding and Sleep Outfitters, as well as Dreams and SOVA, two retailers that remained multi-brand post-acquisition. The graphic following the ninth sentence purports to reflect a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content.

28.     Tempur Sealy admits that it understands the allegations in the first sentence to be true. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence. Tempur Sealy admits that it understands the allegations in the third sentence to be true. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence or the graphic following the fourth sentence.

29.     Admitted.

30.     Tempur Sealy admits the allegations in the first sentence. Tempur Sealy admits that it owns and operates mattress factories but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences.

31.     Tempur Sealy admits the allegations in the first sentence. Tempur Sealy admits that mattresses can be classified as innerspring, foam, hybrid, and gel but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence. As to the third sentence, Tempur Sealy admits that quality can vary between mattresses but otherwise denies the allegations. Tempur Sealy admits the allegations in the fourth sentence.

32.     Tempur Sealy denies the allegations in the first and second sentences. As to the third, fourth, and fifth sentences, the term "premium" is

vague and Tempur Sealy denies the allegations on that ground; further, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

33.     Tempur Sealy denies the allegations in the first sentence. As to the second sentence, Tempur Sealy admits that customers can have varying mattress preferences but otherwise denies the allegations. As to the third sentence, Tempur Sealy admits that mattress purchases can be expensive and infrequent but otherwise denies the allegations. As to the fourth sentence, Tempur Sealy admits that such an estimate existed in 2021, but it has made other estimates at other times; otherwise Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

34.     Tempur Sealy admits that sales associates can be helpful for customers shopping either online or in brick-and-mortar stores but otherwise denies the allegations in the first and second sentences. The third sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content.

35.     Tempur Sealy denies the allegations in the first sentence. As to the second sentence, the term "premium" is vague and Tempur Sealy denies the allegations on that ground; otherwise, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. As to the third sentence, Tempur Sealy admits that customers can and do buy

mattresses online but otherwise denies the allegations. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence. Tempur Sealy denies the allegations in the fifth sentence.

36.     Tempur Sealy denies the allegations in the first sentence. As to the second sentence, Tempur Sealy admits that it understands Casper, Purple, Resident Home, and Tuft & Needle all have offered a bed in a box; otherwise Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third, fourth, fifth, and sixth sentences.

37.     Tempur Sealy admits the allegations in the first sentence are tautologically true. In the second sentence, "significant" is vague and Tempur Sealy denies its allegations on that ground. Tempur Sealy admits the allegations in the third sentence. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence. As to the fifth sentence, Tempur Sealy admits that mattress suppliers often compete for slots by offering financial incentives, which can include employing strategies intended to maintain high retailer margins.

38.     Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence. Tempur Sealy

admits the allegations in the second sentence. As to the third sentence, Tempur Sealy admits that a co-op payment may be structured as described. The fourth sentence is not a factual allegation and requires no response.

39.    Tempur Sealy admits the allegations in the first sentence. The second and third sentences purport to characterize a contract, and Tempur Sealy respectfully refers the Court to that contract for a full and accurate view of its content.

40.    Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence. As to the second sentence, Tempur Sealy admits that mattress suppliers may offer exclusive products to retailers but otherwise denies the allegations or lacks knowledge or information sufficient to form a view of the truth of the allegations. The third sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. As to the fourth and fifth sentences, Tempur Sealy admits that mattress suppliers may use a Minimum Advertised Price, which typically sets a price floor, and/or a Unilateral Pricing Policy, which sets a specific price; Tempur Sealy otherwise denies the allegations. As to the sixth sentence, Tempur Sealy admits that it has a Unilateral Pricing Policy for Tempur-Pedic and Stearns & Foster mattresses; otherwise, the use of "premium" is vague and Tempur Sealy denies the allegations on that ground; Tempur Sealy lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in the sixth sentence. As to the seventh sentence, Tempur Sealy admits that it sometimes attempts to identify departures from its pricing policies but otherwise denies the allegations.

41.    Tempur Sealy denies the allegations in the first and second sentences. As to the third sentence, Tempur Sealy admits that Casper, Purple, and others have successfully entered as mattress suppliers, but otherwise Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. The fourth sentence purports to reflect a quote from a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content.

42.    The first sentence purports to quote from a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. As to the second sentence, the term "premium" is vague, and Tempur Sealy denies the allegations on that ground. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence. As to the fourth sentence, Tempur Sealy admits that Sealy mattresses can have different materials and that product names can be exclusive to certain retailers; otherwise, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. As to the fifth sentence, Tempur Sealy admits that Tempur-Pedic

mattresses are made with a proprietary memory foam; it otherwise denies the allegations as "premium" is vague, and Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding sales revenue. As to the sixth sentence, Tempur Sealy admits that it makes Stearns & Foster mattresses but otherwise denies the allegations. Tempur Sealy admits the allegations in the seventh sentence.

43.    As to the first sentence, the term "crown jewel" is vague, and Tempur Sealy denies the allegations on that ground. As to the second sentence, Tempur Sealy admits that Tempur-Pedic mattresses are made with a proprietary memory foam and that it has advertised that Tempur-Pedic is the most highly recommended bed in America; otherwise, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations; further, where the second sentence appears to quote from a document, Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence.

44.    As to the first sentence, Tempur Sealy admits that it competes with Serta Simmons; otherwise, the terms "main" and "next-largest" are vague and Tempur Sealy denies the allegations on those grounds. As to the second sentence, Tempur Sealy admits that it understands Serta Simmons to own

Beautyrest, Serta, and Tuft & Needle mattresses; otherwise, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third, fourth, and fifth sentences. As to the sixth sentence, Tempur Sealy admits that it understands Serta Simmons underwent Chapter 11 bankruptcy; otherwise, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. As to the seventh sentence, to the extent it purports to quote a document, Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content, and Tempur Sealy otherwise denies its allegations.

45.     As to the first sentence, Tempur Sealy admits that it competes with Sleep Number; but otherwise Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. Tempur Sealy admits the allegations in the second sentence. As to the third, fourth, and fifth sentences, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

46.     Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

47.     Tempur Sealy admits the allegations in the first sentence. Tempur Sealy denies the allegations in the second sentence.

48.     Tempur Sealy denies the allegations in the first sentence. As to the second sentence, Tempur Sealy admits that Tempur-Pedic is a successful mattress brand; further, the term "must-have brand" is vague, and Tempur Sealy denies the allegations on that ground; further, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. The third sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content; further, Tempur Sealy denies the characterization as misleading. Tempur Sealy denies the allegations of the fourth and fifth sentences. As to the sixth sentence, Tempur Sealy admits that it had an initiative encouraging retailers to carry a broader array of Tempur Sealy products but Tempur Sealy otherwise denies the allegations. As to the seventh sentence, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

49.     Tempur Sealy denies the allegations in the first sentence. As to the second sentence, Tempur Sealy admits that it classifies some retailers as "TSI-only," meaning they only sell Tempur Sealy mattresses, and some retailers as "TSI-dominant," typically meaning that most of their slots are Tempur Sealy mattresses, but Tempur Sealy otherwise denies the allegations. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence.

20

50.     As to the first and second sentences, Tempur Sealy admits that some of its contracts with mattress retailers require the retailer not to sell certain mattresses; Tempur Sealy otherwise denies the allegations. The third sentence purports to characterize a contract, and Tempur Sealy respectfully refers the Court to that contract for a full and accurate view of its content.

51.     Tempur Sealy denies the allegations in the first sentence. The second sentence and following graphic purport to characterize and reflect a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. As to the third sentence, Tempur Sealy admits that its stock price reached an all-time high earlier this year.

52.     Tempur Sealy denies the allegations in the first, second, and third sentences. As to the fourth sentence, Tempur Sealy admits that, as a horizontal competitor, it has competed with Purple for floor space, but Tempur Sealy otherwise denies the allegations.

53.     Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54.     Tempur Sealy denies the allegations in the first sentence. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence. The third sentence purports to quote a document, Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. As to the fourth sentence, Tempur Sealy

lacks knowledge or information sufficient to form a belief as to the truth of the allegations. As to the fifth sentence, the term "premium" is vague, and Tempur Sealy denies the allegations on that ground.

55.     As to the first sentence, the term "premium" is vague, and Tempur Sealy denies the allegations on that ground. As to the second sentence, Tempur Sealy admits that, in 2022, approximately ▉ of its wholesale revenue was through Mattress Firm; Tempur Sealy otherwise denies the allegations. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the third sentence. Tempur Sealy denies the allegations of the fourth sentence.

56.     Denied.

57.     Tempur Sealy denies the allegations in the first sentence. Tempur Sealy admits the allegations in the second sentence. Tempur Sealy denies the allegations in the third, fourth, fifth, and sixth sentences. As to the seventh sentence, Tempur Sealy admits that its total net sales in North America was approximately $2.5 billion in 2019 and approximately $4 billion in 2021.

58.     Tempur Sealy denies the allegations in the first sentence. The second sentence purports to quote a document, Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content.

59.     Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.

60.     Tempur Sealy denies the allegations in the first sentence. The second sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. As to the third sentence, to the extent it purports to quote a document, Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content, and Tempur Sealy otherwise denies the allegations.

61.     As to the first sentence, Tempur Sealy admits that, in the context of resolving an issue about co-op advertising spending, Tempur Sealy asked Mattress Firm not to floor Casper, but Tempur Sealy otherwise denies the allegations. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence.

62.     Tempur Sealy denies the allegations in the first sentence. The second sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content; Tempur Sealy also denies this characterization as misleading.

63.     Denied.

64.     Tempur Sealy denies the allegations in the first sentence. The second and third sentences characterize documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content.

23

65.     As to the first sentence, "sought to displace" is vague, and Tempur Sealy denies the allegations on that ground. Tempur Sealy admits the allegations in the second sentences. The third and fourth sentences quote documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content. Tempur Sealy admits the allegations in the fifth sentence.

66.     As to the first and second sentences, Tempur Sealy admits that it understands that, in 2020, Mattress Firm did not floor Casper; Tempur Sealy otherwise denies the allegations. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence. The fourth sentence purports to characterize a contract, and Tempur Sealy respectfully refers the Court to that contract for a full and accurate view of its content.

67.     Tempur Sealy admits that there was an unwritten agreement not to floor Casper as part of resolving a co-op advertising issue; Tempur Sealy otherwise denies the allegations in Paragraph 67. To the extent Paragraph 67 purports to quote documents, Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content.

68.     As to the first sentence, Tempur Sealy admits that Mattress Firm has tried to floor Casper but has not done so. As to the second sentence, Tempur Sealy admits that, in 2022, Tempur Sealy raised concerns about Mattress Firm

flooring Casper. The third sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content.

69.    The first sentence is a legal conclusion to which no response is needed; to the extent a response is needed, Tempur Sealy admits that the FTC has the burden of establishing relevant product and geographic markets. Tempur Sealy denies the allegations in the second sentence.

70.    Denied.

71.    Denied.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Tempur Sealy denies the allegations in the first sentence. As to the second sentence, Tempur Sealy admits that it has sometimes referred to a particular price band as "premium," but otherwise denies the allegations. The third, fourth, fifth, and sixth sentences purport to quote documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content. Further, as to the allegations in the sixth sentence not purporting to quote a document, Tempur Sealy denies the allegations. As to the seventh sentence, Tempur Sealy admits that it is aware that Mattress Firm sometimes refers to mattresses by price band, but

otherwise, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

76.   As to the first sentence, Tempur Sealy admits that mattress retailers can provide the ability to test mattresses and sometimes employ salespeople who can be helpful; Tempur Sealy otherwise denies the allegations. Tempur Sealy denies the allegations in the second and third sentences.

77.   The allegations in Paragraph 77 are legal conclusions to which no response is needed. To the extent a response is needed, the term "premium" is vague, and Tempur Sealy denies the allegations on that basis. Further, Tempur Sealy denies that mattresses imported into the United States can be excluded from the relevant geographic market.

78.   Denied.

79.   Denied.

80.   Denied.

81.   Tempur Sealy denies the allegations in the first sentence. The second and third sentences and the following graphic purport to quote and reflect documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content; Tempur Sealy also denies the characterization as misleading.

82.   Tempur Sealy denies the allegations in the first sentence. The second sentence purports to characterize and quote a document, and Tempur

Sealy respectfully refers the Court to that document for a full and accurate view of its content. As to the third sentence, Tempur Sealy admits that, at times, █████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ Tempur Sealy otherwise denies the allegations. The fourth and fifth sentences purport to quote documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content. Tempur Sealy denies the allegations in the sixth sentence.

83.   Denied.

84.   Tempur Sealy denies the allegations in the first and second sentences. The third sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. Tempur Sealy denies the allegations in the fourth sentence. The fifth and sixth sentences purport to characterize and quote documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content.

85.   Tempur Sealy denies the allegations in the first sentence. The second sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content; further, Tempur Sealy denies the allegations as a mischaracterization of the document.

86.     Denied.

87.     Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87.

88.     Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence. As to the second and third sentences, ███████████████████████████████████ ███████████████████████████████████ but Tempur Sealy denies that Mattress Firm has "unparalleled insight into consumer behavior"; otherwise, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences. As to the fourth sentence, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

89.     Denied.

90.     Tempur Sealy denies the allegations in the first sentence. As to the second and third sentences, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. The fourth sentence purports to characterize a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. Tempur Sealy denies the allegations in the fifth sentence.

91.     Tempur Sealy denies the allegations in the first sentence. Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence.

92.     Tempur Sealy denies the allegations in the first sentence. The second and third sentences and the bullets that follow purport to characterize contracts, and Tempur Sealy respectfully refers the Court to those contracts for a full and accurate view of their content.

93.     Tempur Sealy denies the allegations in the first sentence. The second sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. Tempur Sealy denies the allegations in the third sentence.

94.     Denied.

95.     Tempur Sealy denies the allegations in the first, second, third, and fourth sentences. As to the fifth sentence, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. Tempur Sealy denies the allegations in the sixth sentence. As to the seventh sentence, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

96.     Denied.

97.     Tempur Sealy denies the allegations in the first sentence. Tempur Sealy admits the allegations in the second, third, and fourth sentences.

Tempur Sealy denies the allegations in the fifth sentence. As to the sixth sentence, to the extent it purports to quote a document, Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content; further, Tempur Sealy responds that, at other times, it made other recapture estimates. Tempur Sealy denies the allegations in the seventh sentence.

98. Tempur Sealy denies the allegations in the first, second, third, and fourth sentences. As to the fifth sentence, the term "significant" is vague, and Tempur Sealy denies the allegations on that ground; further, the fifth sentence purports to characterize a contract, and Tempur Sealy respectfully refers the Court to that contract for a full and accurate view of its content. Tempur Sealy denies the allegations in the sixth sentence.

99. Denied.

100. Denied.

101. As to the first sentence, "major battleground" is vague, and Tempur Sealy denies the allegations on that ground. Tempur Sealy admits the allegations in the second sentence. The third sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content; further, Tempur Sealy denies the characterization as misleading. As to the fourth sentence, Tempur Sealy admits that Mattress Firm sells Purple mattresses but otherwise denies the

allegations. As to the fifth sentence, Tempur Sealy admits that it developed a strategy to compete with Purple but otherwise denies the allegations.

102.   Tempur Sealy admits that it created a crushable grid/wafer mattress ██████████████████████████████████████████████ Tempur Sealy otherwise denies the allegations in Paragraph 102.

103.   Denied.

104.   Tempur Sealy denies the allegations in the first sentence. As to the second and third sentences, Tempur Sealy admits that the proposed transaction will result in the elimination of double marginalization; otherwise, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. Tempur Sealy denies the allegations in the fourth sentence.

105.   Paragraph 105 purports to quote documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content.

106.   Tempur Sealy admits that it made the quoted statement but simultaneously reaffirmed that "the business combination is not predicated on us taking over the floor"; Tempur Sealy otherwise denies the allegations in Paragraph 106.

107.   Tempur Sealy denies the allegations in the first and second sentences. The third sentence purports to characterize a document, and

Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content.

108.   Paragraph 108 purports to quote and reflect various documents, and Tempur Sealy respectfully refers the Court to those documents for a full and accurate view of their content. Further, Tempur Sealy responds that those quotes are inconsistent with Tempur Sealy's intent and incentive.

109.   Tempur Sealy denies the allegations in the first sentence. Tempur Sealy admits the allegations in the second sentence. The third sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. As to the fourth sentence, Tempur Sealy admits that, prior to the acquisition, Sleep Outfitters offered a small, ███████ mattress brand called Symbol, and it no longer does.

110.   Paragraph 110 contains a legal argument to which no response is required. To the extent a response is required, Tempur Sealy denies the allegations.

111.   Denied.

112.   Denied.

113.   Denied.

114.   Tempur Sealy denies the allegations in the first sentence. As to the second and third sentences, Tempur Sealy lacks knowledge or information

sufficient to form a belief as to the truth of the allegations. As to the fourth sentence, Tempur Sealy admits that companies can and do vertically integrate, but Tempur Sealy otherwise denies the allegations. As to the fifth sentence, Tempur Sealy admits that it acquired Sleep Outfitters in 2019, but Tempur Sealy otherwise denies the allegations. Tempur Sealy admits the allegations in the sixth sentence.

115.   Tempur Sealy denies the allegations in the first sentence. The second sentence purports to quote a document, and Tempur Sealy respectfully refers the Court to that document for a full and accurate view of its content. As to the third sentence, Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations. Tempur Sealy denies the allegations in the fourth and fifth sentences.

116.   Denied.

117.   Denied.

118.   Denied.

119.   Denied.

120.   Tempur Sealy lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120.

121.   Denied.

122.   Denied.

123.   As to the first sentence, Tempur Sealy admits that it has made several commitments that resolve any possible competition concerns; Tempur Sealy otherwise denies the allegations. Tempur Sealy denies the allegations in the second sentence.

124.   Tempur Sealy admits the allegations in the first sentence. The second sentence characterizes contracts, and Tempur Sealy respectfully refers the Court to those contracts for a full and accurate view of their content. Tempur Sealy denies the allegations in the third sentence.

125.   Paragraph 125 contains legal assertions to which no response is required. To the extent a response is required, Tempur Sealy denies the allegations. Further, the characterization of Section 13(b) is incorrect: to grant the FTC's requested preliminary injunction, the Court must conclude that the FTC has made a clear showing establishing a "likelihood of ultimate success," conclude that the public interest favors the injunction, and weigh the equities. *See* 15 U.S.C. § 53(b); *see also Starbucks Corp. v. McKinney*, 144 S. Ct. 1570 (2024).

126.   Paragraph 126 reflects legal assertions to which no response is required. To the extent a response is required, they are denied.

127.   Paragraph 127 reflects legal assertions to which no response is required. To the extent a response is required, they are denied.

128.   Paragraph 128 reflects legal assertions to which no response is required. To the extent a response is required, they are denied.

129.    Paragraph 129 reflects requests for relief to which no response is required. To the extent a response is required, they are denied.

## Defenses

1. The FTC cannot show that it is entitled to a preliminary injunction, which is "an extraordinary equitable remedy that is never awarded as of right." *Starbucks*, 144 S. Ct. at 1576.

2. The FTC cannot clearly establish a likelihood of ultimate success (*i.e.*, that the proposed transaction is likely to substantially harm competition under Section 7 of the Clayton Act), including because:

    A. The Complaint fails to allege a valid product market, including because the Complaint lacks a cogent definition of "premium" mattresses.

    B. The Complaint fails to allege a valid geographic market, including because the Complaint apparently fails to account for imported mattresses sold in the United States.

    C. The FTC cannot show that the proposed transaction will plausibly harm consumers or competition, including because the Complaint fails to plausibly allege that Defendants exercise market power, fails to identify Mattress Firm's market share, fails to account for

alternative means of distribution, fails to account for Defendants'
voluntary commitments, and fails to account for the fact that new
entry and expansion by competitors can be timely, likely, and
sufficient.

D. The FTC alleges only that the proposed transaction will harm one
or two *competitors*, not competition or consumers.

3. The FTC cannot show that the public interest favors a preliminary
injunction, including because the proposed transaction is not likely to
substantially harm competition and instead will benefit competition and
customers.

4. The equities do not favor a preliminary injunction, including because the
proposed transaction will benefit competition and customers and
because granting a preliminary injunction would seriously injure
Defendants.

Dated: July 23, 2024                    Respectfully submitted,

                                        */s/ Ryan A. Shores*

                                        Ryan A. Shores
                                        D. Bruce Hoffman
                                        Daniel P. Culley
                                        Matthew I. Bachrack
                                        Blair W. Matthews

Jacob M. Coate
Gabriel J. Lazarus
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Ave., NW
Washington, D.C. 20037
202-974-1500
bhoffman@cgsh.com
rshores@cgsh.com
dculley@cgsh.com
mbachrack@cgsh.com
bmatthews@cgsh.com
jcoate@cgsh.com
glazarus@cgsh.com

Heather S. Nyong'o
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
650 California St.
San Francisco, CA 94108
415-796-4400
hnyongo@cgsh.com

Lina Bensman
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
212-225-2000
lbensman@cgsh.com

*Counsel for Tempur Sealy
International, Inc.*

## Certificate of Service

I hereby certify that on July 23, 2024, I electronically filed a true and correct copy of the foregoing document using this Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

I also certify that I caused an unredacted copy of the foregoing document to be served via email to:

apergament@ftc.gov; amaltas@ftc.gov; cwint@ftc.gov; dallen1@ftc.gov; ialbright@ftc.gov; kpasupula@ftc.gov; tmartin@ftc.gov; ytucker@ftc.gov; aritchie@ftc.gov; adurst@ftc.gov; avia.gridi@stblaw.com; chwang@ftc.gov; estevenson1@ftc.gov; geoffrey@schmelkin@stblaw.com; jtabbaa@ftc.gov; jpascale@ftc.gov; lkrachman@ftc.gov; lindsey.bohl@stblaw.com; myellen@ftc.gov; mjoseph1@ftc.gov; nmiller2@ftc.gov; preston.miller@stblaw.com; rmosier@ftc.gov; sara.razi@stblaw.com; srodger@ftc.gov; wsohn@ftc.gov; xgong@ftc.gov

*/s/ Ryan A. Shores*
Ryan A. Shores