UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Federal Trade Commission,<br>                    Plaintiff,<br><br>vs.<br><br>Tempur Sealy International, Inc., *et al.*,<br>                    Defendants. | Civil Action No. 4:24-cv-02508<br><br>Judge Charles Eskridge |

**Defendants' Reply in Support of Notice of Revised Slot Commitment**

The Slot Commitment preserves the pre-merger percentage of premium third-party slots at Mattress Firm and thus the pre-merger status quo—more than *Illumina* requires. The FTC does not dispute this, and its procedural quibbles are meritless.

1. The Slot Commitment—like commitments in other cases—is one fact among many confirming that Defendants have no plan or incentive to foreclose competitors. For example, in *FTC v. Microsoft*, the court found no incentive to foreclose based on a holistic analysis including Microsoft's commitment to supply competitors. 681 F.Supp.3d 1069, 1090–91 (N.D. Cal. 2023); *see U.S. v. AT&T*, 310 F.Supp.3d 161, 241 n.51 (D.D.C. 2018). If Tempur Sealy had a plan or incentive to foreclose third-party "premium" suppliers, it would not commit to the Court to preserve those suppliers' current slot percentage.

2. The FTC criticizes the Slot Commitment as a "unilateral promise," Opp. 3, but the Court invited just that. 12/16 Tr. 88:20–21 ("Tempur Sealy could…unilaterally commit to me…."). That is not unusual. Commitments need not be in executed contracts but come in many forms, including open offers (*AT&T, Microsoft,* and *Illumina*),[1] internal policies (*UnitedHealth*),[2] and

---

[1] 310 F.Supp.3d at 184; 681 F.Supp.3d at 1091; 88 F.4th 1036, 1044 (5th Cir. 2023).

[2] 630 F.Supp.3d 118, 128 (D.D.C. 2022).

1

representations to courts (*Booz Allen*, *H&R Block*, and *Cardinal Health*).³ And they come in many flavors, including commitments to impose firewalls (*UnitedHealth* and *Booz Allen*),⁴ to maintain bids and incentivize competition (*Booz Allen*),⁵ to offer products (*Microsoft* and *Illumina*),⁶ to arbitrate (*AT&T*),⁷ to divest (*UnitedHealth*),⁸ and to not raise prices (*H&R Block* and *Cardinal Health*). ⁹ And, as here, parties often make multiple commitments. *UnitedHealth*, 630 F.Supp.3d at 128; *Booz Allen*, 2022 WL 9976035, at *7 n.19. The divestiture and Slot Commitment are "post-signing, pre-closing adjustment[s] to the status quo" that further refute any substantial lessening of competition. *Illumina,* 88 F.4th at 1056.

3. Courts rely on commitments because defendants face reputational, financial, and legal consequences if they do not follow through. *Microsoft*, 681 F.Supp.3d at 1090–92 ("Why would Microsoft risk that brand reputational harm?"); *UnitedHealth*, 630 F.Supp.3d at 146–47 ("financial and reputational");

---

³ 2022 WL 9976035, at *7 n.19 (D. Md. Oct. 17, 2022); 833 F.Supp.2d 36, 82 (D.D.C. 2011); 12 F.Supp.2d 34, 64 (D.D.C. 1998).

⁴ 630 F.Supp.3d at 128; 2022 WL 9976035, at *7 n.19.

⁵ 2022 WL 9976035, at *7 n.19.

⁶ 681 F.Supp.3d at 1090–91; 88 F.4th at 1044.

⁷ 310 F.Supp.3d at 184.

⁸ 630 F.Supp.3d at 128.

⁹ 833 F.Supp.2d at 82; 12 F.Supp.2d at 64.

*AT&T*, 310 F.Supp.3d at 241 n.51 ("I am hard-pressed to conclude that [AT&T] would (much less could) retreat from the commitment in light of the apparent reputational costs…."). Even two of the *FTC's* cited cases (Opp. 2)—which involved *horizontal* mergers—had "no reason to doubt" defendants' commitments but rejected the commitments on other grounds. *H&R Block,* 833 F.Supp.2d at 82; *see Cardinal Health*, 12 F.Supp.2d at 64.[10]

Here, too, the merging parties will follow through. Defendants will determine compliance with the Slot Commitment annually, supervised by Tempur Sealy's Board's Audit Committee and assessed by an independent consulting firm. Defendants will include a compliance statement in their annual Form 10-K, subject to antifraud provisions and SEC enforcement. In addition, competitors—who carefully monitor Mattress Firm's floor—will surely flag non-compliance. *See* FOF/COL ¶¶ 536–537.

4. The FTC has many tools to investigate and challenge non-compliance that harms competition post-closing. For example, it could bring an action under Clayton Act Section 7 or FTC Act Section 5 (15 U.S.C. § 45(a)), which gives the FTC broad authority to challenge unfair competition, including consummated mergers. *See FTC v. U.S. Anesthesia*, 2024 WL 2137649, at *3 (S.D. Tex. 2024).

---

[10] The FTC's quote from *FTC v. Kroger* (Opp. 2) was about projected benefits, not commitments. Op. 44, No. 24-cv-00347 (D. Or. Dec. 10, 2024), ECF 521.

3

5. Although unnecessary, in denying the preliminary-injunction motion, the Court could order Defendants to comply with the Slot Commitment under its inherent authority or the All Writs Act. 28 U.S.C. § 1651(a); *see U.S. v. Catoggio*, 698 F.3d 64, 67 (2d Cir. 2012) (All Writs Act confers "broad power" and "significant flexibility"); Order, *UnitedHealth*, 22-cv-0481 (D.D.C. Sept. 19, 2022), ECF 135 (denying injunction and ordering defendants to complete proposed divestiture). Indeed, courts commonly enforce "behavioral" commitments. *E.g.*, *U.S. v. United Techs.*, No. 1:12-cv-01230 (D.D.C. 2013), ECF 41 (requiring supply); *U.S. v. Google*, No. 1:11-cv-00688 (D.D.C. 2011), ECF 13 (requiring negotiation on fair-reasonable-and-non-discriminatory terms).

6. The FTC is wrong that commitments must be evaluated (Opp. 9) in the administrative process rather than by this Court. *FTC v. Arch Coal*, 2004 WL 7389952, at *3 (D.D.C. 2004) (rejecting similar argument). Because the Court must determine the likelihood of success on the merits, it must consider the commitment now, *id.*, like the *Microsoft* court did in denying a preliminary injunction. The FTC's suggestion that a settlement could somehow be reached in the administrative process, after yet further delay, is disingenuous, particularly since the FTC has expressed zero interest in settlement. If the FTC was serious, it could have proposed a *joint* motion to withdraw the case from administrative litigation, 16 C.F.R. § 3.25(c), but

instead suggested Defendants file a *unilateral* motion—which would surely be opposed and denied. The FTC wants delay to kill the deal, not to settle.

7. The FTC nitpicks aspects of the Commitment, but each aspect is reasonable and necessary.

*First*, Minimum Performance Criteria refers to standard requirements in Mattress Firm's supplier contracts, *e.g.*, Ex. 4826 ¶13, and is necessary for Mattress Firm to *temporarily* adjust if a supplier fails basic quality standards or there is a supply-chain disruption. *See* 11/19 Tr. (Dament) 73:14–74:12 (Beautyrest quality issues). Mattress Firm has every incentive to floor high-quality third-party products—it otherwise risks losing sales to its many competitors.

*Second*, consumer preferences differ geographically, so store assortments must vary to meet local preferences. 11/19 (Dament) 48:3–16. Applying the Slot Commitment company-wide gives Mattress Firm flexibility to carry the mattresses customers want.

*Third,* the Slot Commitment's five-year duration is consistent with this dynamic industry. *See* 11/25 (Neu) 31:1–11 (frequent disruption); 11/19 (Dament) 50:9–14 (dynamic customers); FOF/COL ¶558 (Purple shifting channels). And it gives competitors time—if they wish—to boost other channels or open their own stores, just as Tempur Sealy did in two years post-breakup.

5

FOF/COL ¶¶560–61. Five years also is consistent with other commitments and decrees.[11]

*Finally*, the FTC's concern that the Slot Commitment does not protect Serta Simmons (Opp. 8) confirms this case seeks to protect a competitor, not competition or consumers.

## Conclusion

The FTC failed to meet its burden at every step, including failing to establish a viable market. The Slot Commitment and divestiture are thus "extra icing on a cake already frosted," confirming what the record already reveals: there will be no substantial harm to competition. *See AT&T*, 310 F.Supp.3d at 241 n.51.

Dated: January 8, 2025

/s/ *Sara Y. Razi*
*Attorney-In-Charge*

Sara Y. Razi
N. Preston Miller
Lindsey C. Bohl
Avia Gridi
Nicholas Ingros
Geoffrey I. Schmelkin

/s/ *Ryan A. Shores*
*Attorney-In-Charge*

Ryan A. Shores
D. Bruce Hoffman
Daniel P. Culley
Blair W. Matthews
Matthew I. Bachrack
Jacob M. Coate

---

[11] *E.g., Teva Pharms. Indus.*, No. C-4589 (FTC Sept. 7, 2016) (3-year commitment); *Google*, No. 1:11-cv-00688 (D.D.C. Oct. 5, 2011) (5-year consent decree); *see Illumina*, 88 F.4th at 1044 (6-year open offer).

6

| | |
|---|---|
| SIMPSON THACHER & BARTLETT LLP<br>900 G. Street, N.W.<br>Washington, D.C. 20001<br>Tel: (202) 636-5500<br>Fax: (202) 636-5502<br>sara.razi@stblaw.com<br>preston.miller@stblaw.com<br>lindsey.bohl@stblaw.com<br>avia.gridi@stblaw.com<br>nicholas.ingros@stblaw.com<br>geoffrey.schmelkin@stblaw.com | Gabriel J. Lazarus<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>2112 Pennsylvania Ave., NW<br>Washington, D.C. 20037<br>202-974-1500<br>bhoffman@cgsh.com<br>rshores@cgsh.com<br>dculley@cgsh.com<br>mbachrack@cgsh.com<br>bmatthews@cgsh.com<br>jcoate@cgsh.com<br>glazarus@cgsh.com |
| Michelle E. Gray<br>State Bar No. 24078586<br>S.D. Tex. Bar No. 892270<br>mgray@foglerbrar.com<br>Deborah C. Milner<br>State Bar No. 24065761<br>S.D. Tex. Bar No. 971677<br>cmilner@foglerbrar.com | Heather S. Nyong'o<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>650 California St.<br>San Francisco, CA 94108<br>415-796-4400<br>hnyongo@cgsh.com |
| FOGLER, BRAR, O'NEIL & GRAY LLP<br>2 Houston Center<br>909 Fannin Street, Suite 1640<br>Houston, TX 77002<br>(713) 481-1010<br>(713) 574-3224 (Fax)<br><br>*Counsel for Mattress Firm Group Inc.* | Lina Bensman<br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>One Liberty Plaza<br>New York, NY 10006<br>212-225-2000<br>lbensman@cgsh.com<br><br>Alex B. Roberts<br>Federal Bar No. 865757<br>Texas State Bar No. 24056216<br>aroberts@beckredden.com<br>BECK REDDEN LLP<br>1221 McKinney Street<br>Suite 4500<br>Houston, TX 77010<br>Tel: (713) 951-3700<br>Fax: (713) 951-3720 |

7

*Counsel for Tempur Sealy International, Inc.*

8

## Certificate of Word Count

I certify that the motion contains 1038 words, excluding the case caption, signature block, and certificates.

*/s/ Ryan A. Shores*
Ryan A. Shores

## Certificate of Service

I hereby certify that on January 8, 2025, I electronically filed a true and correct copy of the foregoing document using this Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Ryan A. Shores*
Ryan A. Shores
